UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Matt Luiken and Jon Sandquist,                  Civil No. 09-516 (DWF/AJB)
on behalf of themselves, all others similarly
situated, and the Proposed Minnesota
Rule 23 Class,

       Plaintiffs,

v.                                                   **MEMORANDUM**
                                                   **OPINION AND ORDER**
Domino's Pizza, LLC,

       Defendant.

___

E. Michelle Drake, Esq., and Paul J. Lukas, Esq., Nichols Kaster, PLLP, counsel for Plaintiffs.

Juli Ann Lund, Esq., and Philip A. Sechler, Esq., Williams & Connolly LLP; and Tracey Holmes Donesky, Esq., Leonard, Street and Deinard, PA, counsel for Defendant.

___

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant Domino's Pizza, LLC ("Domino's"). In their Complaint, Plaintiffs, on behalf of themselves and a purported nationwide collective of Domino's delivery drivers and a putative Rule 23 class of Minnesota drivers (collectively, "Plaintiffs"), primarily assert that Domino's failure to adequately reimburse Plaintiffs for their travel-related expenses resulted in Plaintiffs being paid less than the Federal minimum wage and the Minnesota minimum wage. (Compl. ¶ 2.) The Complaint raises causes of action under the Fair

Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); the Minnesota Fair Labor Standards Act, Minn. Stat. 177.21, *et seq.* ("MFLSA"); and the Minnesota Payment of Wages Act, Minn. Stat. § 181.001, *et seq.* For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Matt Luiken and John Sandquist are both residents of Minnesota. According to the Complaint, Luiken is currently employed as a Domino's pizza delivery driver and has been since August 2006. (Compl. ¶ 9.) Sandquist was employed as a Domino's pizza delivery driver from July 2003 to December 2007. (*Id.* ¶ 11.) The purported class members are similarly-situated current and former Domino's pizza delivery drivers. Domino's is a foreign corporation with its headquarters in Ann Arbor, Michigan. (*Id.* ¶ 17.)

The Complaint alleges that Plaintiffs "were paid a set amount for each delivery trip, in addition to their regular hourly wages." (*Id.* ¶ 26.) The Complaint contends that the amount that they were paid per trip "varied depending on the number of delivery stops made during the trip." (*Id.* ¶ 27.) The Complaint alleges that the amount that Plaintiffs were paid per trip "was not sufficient to reimburse them for actual expenses incurred in delivering [Domino's] pizzas." (*Id.* ¶ 28.) As a result, the Complaint alleges that Plaintiffs were deprived of the minimum wage they were guaranteed under federal and state law. (*Id.* ¶ 29.)

The Complaint further alleges that Domino's "charges Minnesota pizza delivery customers an amount identified as a 'delivery charge' on the receipt provided to

customers" and that such charge is retained by Domino's in its entirety. (*Id.* ¶¶ 31-32.) The Complaint asserts that the earning statements that Domino's has provided to Plaintiffs fail to reflect deductions for travel expenses. (*Id.* ¶ 33.) Finally, the Complaint alleges that Domino's does not maintain records of the actual travel expenses incurred by the drivers. (*Id.* ¶ 34.)

Here, Domino's moves to dismiss on several grounds. First, Domino's asserts that Plaintiffs' claims for insufficient reimbursement for their auto expenses fail because Plaintiffs do not allege that Domino's had any notice of any such insufficiency. Second, Domino's contends that Plaintiffs' claim for unlawful retention of gratuities is preempted by federal law. Finally, Domino's asserts that Plaintiffs' claims of record-keeping violations fail because they rest on statutory requirements that do not exist.

## DISCUSSION

**I.     Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Counts One, Two, and Three

Plaintiffs contend that their allegedly unreimbursed automobile expenses resulted in their wages falling below the statutory minimum wage. In Counts One and Two, Plaintiffs assert that they received less than the mandatory federal and state minimum wages as a result of Domino's alleged failure to fully reimburse Plaintiffs' automobile expenses in violation of the FLSA and the MFLSA. Further, in Count Three, Plaintiffs contend that Domino's unlawfully made a direct or indirect deduction from Plaintiffs' wages by requiring Plaintiffs to pay for their own travel expenses. Plaintiffs assert that this practice violated the MFLSA.

Domino's contends that Plaintiffs' failure to plead that Domino's had notice that Domino's reimbursement payments were insufficient is fatal to Counts One, Two, and Three. Specifically, Domino's points out that although Plaintiffs allege that Domino's paid them a set amount to cover automobile expenses, Plaintiffs do not allege that they ever informed Domino's of any insufficiencies with their automobile expenses, nor do Plaintiffs allege that they ever provided Domino's with any documentation that quantified such excess expenses. Domino's contends that Plaintiffs cannot proceed without alleging facts that are sufficient to charge Domino's with notice of the unreimbursed expenses that allegedly caused Plaintiffs' wages to drop below the statutory minimums.

In support of this contention, Domino's looks to Federal regulations promulgated pursuant to the FLSA that require that "[w]hether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. Further, Domino's points to Minnesota law limiting direct and indirect deductions that can be made from an employee's wages. Minn. Stat. § 177.24(4). Domino's also points to the FLSA's definition of "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g); *see also* Minn. Stat. § 177.23(5) (defining "employ" as "to permit to work").

Domino's also relies upon two overtime cases that required notice of the alleged violations pursuant to this language. First, in *Davis v. Food Lion*, the Fourth Circuit affirmed the district court's judgment that the plaintiff was required under the FLSA to prove the employer's actual or constructive knowledge of his allegedly uncompensated

5

overtime work as an element of his case. 792 F.2d 1274, 1276 (4th Cir. 1986). Specifically, the court stated:

> The dispute before us simply concerns whether, as a procedural matter, proof of an employer's knowledge is an element of the plaintiff/employee's case or whether lack of knowledge is an affirmative defense to be raised and proved by the employer. Upon review of the Act and the applicable case law, we find that the district court correctly required Davis to prove Food Lion's actual or constructive knowledge of his overtime work as an element of his case.

*Id*. The court relied on the "suffer or permit to work" language to support its holding. The court stated, "[t]his element of constructive or actual knowledge is especially significant in a case such as this one, in which an employee deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated hours." *Id*. at 1277. Second, Domino's relies upon *Hertz v. Woodbury County, Iowa*. 2008 WL 2095553 (N.D. Iowa). In that case, the district court on a motion for summary judgment similarly determined that the plaintiff's FLSA overtime compensation claim required proof that the employer knew or should have known of the overtime work. *Id*. at *6. However, the court ultimately held that the jury should decide the disputed factual matter as to whether the employer had knowledge of the allegedly unpaid overtime. *Id*.

Domino's also finds support in other statutory and regulatory language regarding reimbursement of expenses. The administrative rule interpreting Minn. Stat. § 177.24(4) defines reimbursable "travel expenses" as "receipted out-of-pocket expenses for transportation, meals and lodging, or an agreed upon allowance, whichever is greater." Minn. R. 5200.0090(1). Domino's asserts that because Plaintiffs did not give notice of a deficiency, Domino's was entitled to rely upon the "flat rate" that it paid Plaintiffs on a

per delivery basis. In addition, Domino's contends that absent notice, it was entitled to rely upon the "reasonably approximate amount expended" by Plaintiffs in delivering pizzas pursuant to federal regulations. *See* 29 C.F.R. § 778.217.

The Court finds that neither the statutory nor regulatory schemes of the FLSA or the MFLSA contemplate heightened pleading requirements in this circumstance. Even if the Court were to find support for Domino's position in *Hertz* or *Davis*, both of those cases related to overtime, which is an entirely different situation than here. As aptly noted by Plaintiffs, to employ such a pleading requirement would, in effect, create a waiver of some kind where, by failing to affirmatively notify the employer, the employee could waive their right to minimum wage. Such waiver is not permitted. *See* Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602-03 (1944) (employees cannot waive their right to be compensated for work performed); Minn. Stat. § 177.27. subd. 8 ("An agreement between the employee and the employer to work for less than the applicable wage is not a defense to [a minimum wage] action.") The Court finds no support to impose such a pleading requirement on the parties on the facts alleged in this case. Thus, Domino's Motion to Dismiss is denied in regard to notice as to Counts One, Two, and Three.

Domino's also asserts that Count Three should be dismissed because it lacks any basis in statute. Count Three of the Complaint alleges that Domino's violated the $50 limit for certain deductions established in Minn. Stat. § 177.24. That Section reads:

> Subd. 4. **Unreimbursed expenses deducted.** Deductions, direct or indirect, from wages or gratuities not authorized by this subdivision may only be taken as authorized by sections 177.28, subdivision 3, 181.06, and

7

>181.79.  Deductions, direct or indirect, for up to the full cost of the uniform or equipment as listed below, may not exceed $50.  No deductions, direct or indirect, may be made for the items listed below which when subtracted from wages would reduce the wages below the minimum wage:
>
>>(1) purchased or rented uniforms or specially designed clothing required by the employer, by the nature of the employment, or by statute as a condition of employment, which is not generally appropriate for use except in that employment;
>
>>(2) purchased or rented equipment used in employment, except tools of a trade, a motor vehicle, or any other equipment which may be used outside the employment;
>
>>(3) consumable supplies required in the course of that employment;
>
>>(4) travel expenses in the course of employment except those incurred in traveling to and from the employee's residence and place of employment.
>
>Subd. 5.  **Expense reimbursement.**  An employer, at the termination of an employee's employment, must reimburse the full amount deducted, directly or indirectly, for any of the items listed in subdivision 4. When reimbursement is made, the employer may require the employee to surrender any existing items for which the employer provided reimbursement.

Minn. Stat. § 177.24.  The Complaint alleges that Plaintiffs were each subject to a deduction for travel expenses that exceeded $50.  (Compl. ¶ 79.)  Further, the Complaint alleges that by requiring Plaintiffs to pay for their own travel expenses, Domino's made an unlawful direct or indirect deduction from Plaintiffs' wages and unlawfully reduced the wages below minimum wage.  (Compl. ¶¶ 77-78.)

Domino's asserts that Count Three should be dismissed because Plaintiffs' claims do not fall within the categories contemplated by Section 177.24.  Domino's contends that travel expenses are not subject to the $50 limit for "uniform or equipment" of

8

unreimbursed deductions set forth in subdivision 4.  Further, Domino's asserts that even if Plaintiffs' expenses fall within the category for "purchased and rented equipment," this category specifically does not include "a motor vehicle . . . which may be used outside the employment."  Minn. Stat. 177.24(4)(2).  In their briefing, Plaintiffs did not respond to these arguments.

Plaintiffs have alleged that the deductions for their travel expenses resulted in Plaintiffs' wages falling below the minimum wage.  Such a violation falls within the realm of section 177.24, subd. 4's protection.  As a result, Domino's motion to dismiss is denied in this regard.

### III.   Count Four

In Count Four of the Complaint, Plaintiffs assert that Domino's unlawfully required Plaintiffs to contribute or share a gratuity received by them as employees with Domino's as their employer, in violation of Minn. Stat. § 177.24.  The Complaint alleges that Domino's charges its pizza delivery customers an amount identified as a "delivery charge" on the receipt provided to customers, but that this amount is retained entirely by Domino's.  Domino's asserts that Plaintiffs' claim for unlawful retention of gratuities is preempted by federal law.  Specifically, Domino's asserts that to the extent that Plaintiffs read this statute to apply to its delivery charge, the Minnesota statute conflicts with federal law.

A state law that conflicts with a federal law is preempted under the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2.  *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985).  Congressional intent to

9

preempt state law can either be expressed in statutory language or implied in the structure and purpose of federal law. *Id*. at 713. Implied preemption has two types—field and conflict preemption. Field preemption is inferred where Congress legislates so pervasively in a particular field that no room remains for supplementary state legislation. *Id*. Even if Congress has not completely displaced state regulation, preemption may occur when state law actually conflicts with federal law. *Id*. Conflict preemption arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id*. (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). State laws can be preempted by both federal statutes and federal regulations. *Id*. at 713.

Domino's asserts that conflict preemption precludes Plaintiffs' claims under Count Four. Domino's contends that if the Minnesota law is applied to Domino's delivery charge, it will create conflicting obligations with federal law.

As to gratuities, Minnesota law provides that "[n]o employer may directly or indirectly credit, apply, or utilize gratuities towards payment of the minimum wage set by this section or federal law." Minn. Stat. § 177.24, subd. 2. Further, the statute provides that:

> any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee. No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees.

10

Minn. Stat. § 177.24, subd. 3.  Minnesota statute defines "gratuity" as

> monetary contributions received directly or indirectly by an employee from a guest, patron, or customer for services rendered and includes an obligatory charge assessed to customers, guests or patrons which might reasonably be construed by the guest, customer, or patron as being a payment for personal services rendered by an employee and for which no clear and conspicuous notice is given by the employer to the customer, guest, or patron that the charge is not the property of the employee.

Minn. Stat. § 177.23(9).  Minn. R. 5200.0080 states:

> For purposes of Minnesota Statutes, section 177.23, subdivision 9, obligatory charges which might reasonably be construed by the guest, customer, or patron as a sum to be given to an employee as payment for personal services rendered, include, but are not limited to, service charges, tips, gratuities, and/or surcharges which are included in the statement of charges given to the customer.

Minn. R. 5200.0080, subp. 4a.  In addition, the Minnesota Rule defines the bounds of

clear and conspicuous notice.  Minn. R. 5200.0080, subp. 4b.

Federal regulations provide that a compulsory charge is the employer's property.

Specifically, the regulations state:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from payment of a charge, if any, made for the service.  Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.

29 C.F.R. § 531.52.  Moreover, the regulations provide:

> A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). . . .  The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee.

11

29 C.F.R § 531.55(a). Further, the regulations provide that "where such sums are distributed by the employer to his employees, they may be used in their entirety to satisfy the monetary requirements of the Act." 29 C.F.R. § 531.55(b).

Domino's contends that to the extent Plaintiffs contend that the "delivery charge" is a "gratuity" under Minnesota law, a point which Domino's disputes, the Minnesota statute conflicts with federal law and thus is preempted. Specifically, Domino's points to federal law, which characterizes the delivery charge as "the employer's property," 29 C.F.R. § 531.55, and, if Plaintiffs are correct in interpreting the delivery charge as a gratuity, Minnesota law characterizing the delivery charge as "the sole property of the employee." Minn. Stat. § 177.24(3).

The Court finds that no conflict preemption exists. Even if the Plaintiffs are correct in asserting that Minnesota law would characterize the delivery charge as a gratuity, a claim that may be called into question after discovery on this issue, the Court finds that no conflicting obligations exist. The Court recognizes that on their face, the statutes appear to be at odds. *See In re Alleged Labor Law Violation of Chafoulias Mgmt.*, 572 N.W.2d 326, 330 (Minn. Ct. App. 1997) ("[29 C.F.R. § 531.52 and 29 C.F.R. § 531.55(a)] are at variance with Minn. Stat. § 177.23, subd. 9, which provides that gratuities include 'an obligatory charge assessed to customers ***' and Minn. R. 5200.0080, subp. 4a, which provides that obligatory charges include 'service charges, tips, gratuities, and/or surcharges ***.'") However, on closer look, this Court finds that construing the delivery charge as a gratuity under Minnesota law does not create conflicting obligations under state and federal law. Under that scenario, the employer

would not be able to count the delivery charge toward the state minimum wage requirement, but would still have to pay the employee the mandatory minimum in addition to the delivery charge.  As such, Plaintiffs' reading of the statute creates a higher state minimum wage, for all practical purposes.  But it does not create conflicting obligations with the employer's federal requirements.  For this reason, the Court finds that the state law is not preempted.  Domino's motion to dismiss is denied in this regard.

## IV.     Counts Five and Six

Counts Five and Six of the Complaint allege record-keeping violations against Domino's.  In Count Five, Plaintiffs allege that Domino's willfully failed to maintain necessary records as required by Minn. Stat. § 177.30.  In Count Six, Plaintiffs assert that Domino's failed to provide Plaintiffs with earning statements pursuant to Minn. Stat. § 181.032.  Domino's contends that these two Counts should be dismissed because Plaintiffs rely upon statutory requirements that do not exist.

Minn. Stat. § 177.30 states:

> (a) Every employer subject to sections 177.21 to 177.44 must make and keep a record of:
> (1) the name, address, and occupation of each employee;
> (2) the rate of pay, and the amount paid each pay period to each employee;
> (3) the hours worked each day and each workweek by the employee;
> (4) for each employer subject to sections 177.41 to 177.44, and while performing work on public works projects funded in whole or in part with state funds, the prevailing wage master job classification of each employee working on the project for each hour worked; and
> (5) other information *the commissioner finds necessary and appropriate to enforce sections 177.21 to 177.35*. The records must be kept for three years in or near the premises where an employee works except each employer subject to sections 177.41 to 177.44, and while performing work on public works projects funded in whole or in part with state funds,

> the records must be kept for three years after the contracting authority has made final payment on the public works project.

(emphasis added). Plaintiffs allege that Domino's was required to maintain the actual expense records for its driver because doing so was "necessary and appropriate to enforce sections 177.21 to 177.35." (Compl. ¶ 45(d) (quoting Minn. Stat. § 177.30(a)(5).)

Domino's points out that Plaintiffs cite no finding by the Commissioner that travel records of delivery drivers need to be maintained. Thus, Domino's contends that no such duty exists pursuant to § 177. 30 (a)(5). Plaintiffs counter that Minn. Stat. § 177.27, subd. 8, states that "[a]n employee may bring a civil action seeking redress for a violation or violations of sections 177.21 to 177.44 directly to district court." Thus, Plaintiffs assert that Plaintiffs themselves can enforce a record-keeping requirement. Moreover, Plaintiffs contend that under the language of § 177.30 (a)(5)—that the Commissioner "finds necessary" rather than "has found necessary"—there is no statutory requirement of a *previous* finding by the Commissioner as a predicate to Domino's duty to maintain the records.

The Court finds no merit to Plaintiffs' assertions. Section 177.30 does not explicitly require that employers maintain records of employees' travel expenditures in this context. Nor is there any finding by the Commissioner that such records need be maintained. For these reasons, the Court finds that Count Five is properly dismissed.

As to Count Six, the Complaint contends that Domino's violated Minn. Stat. § 181.032 by failing to include deductions for travel expenses in the "list of deductions

from an employee's pay" in its earning statements.  Domino's asserts that § 181.032 only requires an employer to reflect direct, not indirect, deductions in the earnings statement.

Section 181.032 provides:

> (a) At the end of each pay period, the employer shall provide each employee an earnings statement, either in writing or by electronic means, covering that pay period. An employer who chooses to provide an earnings statement by electronic means must provide employee access to an employer-owned computer during an employee's regular working hours to review and print earnings statements.
> (b) The earnings statement may be in any form determined by the employer but must include:
> (1) the name of the employee;
> (2) the hourly rate of pay (if applicable);
> (3) the total number of hours worked by the employee unless exempt from chapter 177;
> (4) the total amount of gross pay earned by the employee during that period;
> (5) a list of deductions made from the employee's pay;
> (6) the net amount of pay after all deductions are made;
> (7) the date on which the pay period ends; and
> (8) the legal name of the employer and the operating name of the employer if different from the legal name.

Domino's points to two other statutes passed at the same time—§§ 177.24 and 181.79, each of which encompass both direct or indirect deductions to support their motion to dismiss Count Six.  Domino's asserts that unlike those sections, 181.032 requires only "deductions made from the employee's pay."  Minn. Stat. § 181.032(b)(5).  Domino's contends that because indirect deductions were expressly added in the other two statutes, but not in § 181.032(b)(5), the legislature must deliberately have intended to only reflect direct deductions in § 181.032(b)(5).  Further, Domino's contends that such a reading applied to the allegations here would yield an absurd result, as an employer would be

15

obligated to monitor, record, and verify each employee's vehicle expenditures and report them on a monthly basis.

Plaintiffs counter that Domino's reading of the statute is contorted. Plaintiffs point to language in §181.032 that refers to "all deductions" (§181.032(b)(6)) and assert that language in §§ 177.24 ("deductions, direct or indirect") and 177.25 ("the full amount deducted, directly or indirectly") has the same meaning as "deductions" in § 181.032(b)(5).

The Court finds that the language of the statute does not contemplate indirect deductions such as those at issue here. And the Court agrees with Domino's that to require compliance with such a statutory scheme would place an unattainable burden on the employer. Count Six is dismissed.

## V.     Equitable Tolling

In their response memorandum, Plaintiffs request that the Court equitably toll the statute of limitations on April 24, 2009, the date that Domino's filed its Motion to Dismiss, for all potential class members unless and until this Motion is decided and/or unless and until Domino's answers Plaintiffs' Complaint and participates in discovery. The Court finds no basis for equitable tolling at this time. Thus, to the extent that Plaintiffs raise this issue, Plaintiffs' request is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Domino's Motion to Dismiss (Doc. No. 14) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

      a.     Domino's Motion to Dismiss is **DENIED** as to Counts One, Two, Three, and Four.

      b.     Domino's Motion to Dismiss is **GRANTED** as to Counts Five and Six.  Counts Five and Six are **DISMISSED WITH PREJUDICE**.

2.     Plaintiffs' request for equitable tolling is **DENIED WITHOUT PREJUDICE**.


Dated:  August 3, 2009              <u>s/Donovan W. Frank</u>
                                             DONOVAN W. FRANK
                                             United States District Judge