## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| MATT LUIKEN AND JON SANDQUIST on behalf of themselves, all others similarly situated, and the Proposed Minnesota Rule 23 Class, | ) ) ) ) | Case No. |
| Plaintiffs, | ) ) ) ) | **PLAINTIFFS' FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT** |
| vs. | ) ) | **(JURY TRIAL DEMANDED)** |
| DOMINO'S PIZZA, LLC. | ) ) ) | |
| Defendant. | ) ) | |
| _____ ) | | |

Plaintiffs Matt Luiken and Jon Sandquist ("Plaintiffs"), on behalf of themselves and all others similarly situated, and on behalf of the members of the proposed Minnesota Rule 23 Class, upon personal knowledge as to themselves and upon information and belief as to others, by and through their attorneys, for their Complaint against Defendant Domino's Pizza, LLC ("Defendant"), allege as follows:

### PRELIMINARY STATEMENT

1.      This case is about Defendant's requirement that delivery drivers use their own vehicles to delivery pizzas for Defendant without being fully reimbursed for all travel expenses (i.e., gasoline, maintenance, repairs, insurance, registration, and depreciation) incurred as a result of delivering pizzas.

2.      Defendant's failure to adequately reimburse Plaintiffs, the Nationwide Collective, and the Minnesota Rule 23 Class for expenses incurred on Domino's behalf

has resulted in Plaintiffs, the Nationwide Collective, and the Minnesota Rule 23 Class being paid less than both the Federal minimum wage and the Minnesota minimum wage.

3.    Requiring Plaintiffs to pay for their travel expenses constituted a kick-back to the employer such that the hourly wages which were paid to Plaintiffs were not paid free and clear of all outstanding obligations to the employer.  The travel expenses which were incurred by Plaintiffs in delivering Defendant's pizzas were incurred primarily for the benefit of the employer.

4.    This case is also about Defendant's retention of the "delivery charge" that customers pay for Defendant's delivery service.  The delivery charge constitutes a gratuity under Minnesota law.  Accordingly, Plaintiffs and members of the Minnesota Rule 23 Class were entitled to retain the full amount of the delivery charge.  However, Defendant unlawfully retained the full amount of the delivery charge, thereby depriving Plaintiffs and the Minnesota Rule 23 Class of their rightful property.

5.    Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this Nationwide Collective action against Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA") for failure to pay a minimum wage.

6.    Plaintiffs bring this Minnesota Rule 23 Class Action on behalf of themselves and all members of the proposed Minnesota Rule 23 Class against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of Minnesota state law, including but not limited to the Minnesota Fair Labor Standards

Act, Minn. Stat. § 177.21 *et. seq*., the Minnesota Payment of Wages Act, Minn. Stat. § 181.001*, et. seq.* and the supporting regulations.

7.     Defendant has willfully engaged in a pattern, policy, and practice of unlawful conduct for the actions alleged in this Complaint, in violation of the federal and state rights of the Plaintiffs, similarly situated individuals, and members of the proposed Minnesota Rule 23 Class.

## THE PARTIES

### Plaintiffs

8.     Plaintiff Matt Luiken is an adult individual who is a resident of Minnesota.

9.     Plaintiff Luiken is currently employed by Defendant as a pizza delivery driver and has been so employed since approximately August 2006.

10.     Plaintiff Jon Sandquist is an adult individual who is a resident of Minnesota.

11.     Plaintiff Sandquist was employed by Defendant as a pizza delivery driver from approximately September 2006 to March 2008.

12.     Both Plaintiffs have consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. § 216(b).  Attached as Exhibit A are Plaintiffs signed consent forms.

13.     Plaintiffs and others similarly situated are current and former employees of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

14.    Plaintiffs and members of the Minnesota Rule 23 Class are current and former employees of Defendant within the meaning of Minn. Stat. §177.23.

15.    The Minnesota Rule 23 Class is defined as: "all persons who have worked as Domino's pizza delivery drivers in Minnesota from three years prior to the filing of this Complaint to the entry of judgment in the case" ("Minnesota Rule 23 Class").

**Defendant**

16.    Defendant Domino's Pizza, LLC is a foreign corporation with its headquarters in Ann Arbor, Michigan.

17.    Defendant constitutes Plaintiffs' employer under the FLSA, 29 U.S.C. § 201, *et. seq* and Minn. Stat. § 177.24 as well as other applicable law.

18.    Defendant's annual gross volume of sales made or business done is not less than $500,000.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question, 29 U.S.C. § 216(b).

21.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is a class action with an amount in controversy over $5,000,000, exclusive of interest and costs and at least one member from the plaintiff class is a citizen of a State different from Defendant.

22.     Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District.

23.     Venue in the District of Minnesota is also proper because a substantial part of the events or omissions giving rise to the claim occurred in the District of Minnesota.

## FACTUAL ALLEGATIONS

24.     Plaintiffs, others similarly situated, and members of the Minnesota Rule 23 Class worked as pizza delivery drivers for Defendant.

25.     Upon information and belief, and with rare exception if any, Defendant, during the applicable statutory period, has paid all pizza delivery drivers an hourly rate equal to the greater of the prevailing Federal or State minimum wage.

26.     From August 2006 through approximately July of 2008, Plaintiff Matt Luiken was paid an hourly rate equal to the Minnesota State minimum wage of $6.15. From July 24, 2008 through the present, Plaintiff Matt Luiken has been paid an hourly rate equal to the Federal minimum wage of, from July 24, 2008 to July 24, 2009, $6.55 and, from July 24, 2009 to the present, $7.25.

27.     Throughout course of his employment as a pizza delivery driver, Plaintiff Jon Sandquist received an hourly rate equal to the Minnesota State minimum wage of $6.15.

28.     Plaintiffs, and on information and belief others similarly situated, and members of the Minnesota Rule 23 Class, were paid a set amount for each delivery trip, in addition to their regular hourly wages pursuant to Defendant's "Tiered Reimbursement Program."

29.     Under the Tiered Reimbursement Program, which was has been the cornerstone of Defendant's policy on reimbursement throughout the statutory period, the amount all delivery drivers are paid per trip varies depending on the number of delivery stops made during the trip, with all drivers at each store receiving a set amount for the first stop, a lesser set amount for the second stop, and no amount for any stops beyond two. To be clear: if a driver makes more than two stops on a given run, that driver receives no additional compensation.

30.     The set amount Defendant pays its drivers for the first and second stops is based on a set of assumptions that take into consideration neither actual miles driven nor actual expenses incurred by drivers in the course of their delivering pizzas.

31.     Rather, the Tiered Reimbursement Program has always been based on a nationwide mathematical formula which involves calculations based on assumptions about drivers' fuel economy, maintenance, operating and fixed costs.

32.     All of Defendant's assumptions are based on the assumption that delivery drivers are driving a car which is identical  to a 2005 Toyota Corolla.

33.     Specifically, the Tiered Reimbursement Program assumes that the fuel economy of the cars Defendant's delivery drivers drive is equal to the approximately 29.5 miles per gallon a 2005 Toyota Corolla averages with a mix of city and highway driving.

34.     From its 2005 inception, the Tiered Reimbursement Program has also assumed a fuel prices derived from the American Automobile Association's ("AAA") Fuel Gauge Report.  However, since the inception of Defendant's Tiered Reimbursement

Program in 2005, Defendant has updated its fuel rate assumption only three times: early 2007, May of 2008, and December of 2008.

35.     The Tiered Reimbursement Program also does not take into account or reimburse drivers for the actual costs of automobile insurance or registration, both of which are a condition of working for Defendant.  Instead, it makes generic assumptions based again, on the assumption of a 2005 Toyota Corolla which was licensed and registered in 2005.  Defendant has not updated the amounts used in its formula for license, registration or insurance since 2005.

36.     The Tiered Reimbursement Program also places each of Defendant's stores in a "bucket" based on an estimated average first and second delivery lengths for that store. Defendants calculated the average delivery length for the first and second deliveries at each store using, not actual miles driven by drivers, but, rather, average lengths of the most efficient driving route as determined by MapPoint, a type of computer mapping software similar to Mapquest.

37.     Based on these calculations of the most efficient routes, Defendant placed each store into one of four "buckets" under the Tiered Reimbursement Program, with each bucket defined by a range of miles.

38.     Under the Tiered Reimbursement Program, the "bucket" in which stores are placed is a variable in the single formula that determines the set amount paid for the first and second orders at each store.

39.     Under the Tiered Reimbursement Program, the per delivery reimbursement amount at the Minneapolis store where Plaintiffs Matt Luiken and Jon Sandquist worked

(Store 1901) was $0.55 for the first order and $0.25 for the second order, with the above-mentioned adjustment for fuel prices in approximately December of 2008 bringing the amounts down to $0.50 and $0.20 respectively.

40.     Upon information and belief, the uniform set of assumptions adopted to calculate reimbursement amounts under the Tiered Reimbursement Program, targeted an actual per-mile reimbursement rate at Store 1901 of approximately 26 cents per mile.

41.     Defendant is and has been in possession of: the addresses to which each driver delivered food and the times such deliveries were made, the make and model year of each driver's delivery vehicle, the insurance company used by each delivery driver, and the home address of each delivery driver.  This information would have allowed Defendant to calculate a realistic actual mileage reimbursement for each driver during the statutory period.

42.     Rather than using this information, Defendant instead chose to utilize a nationwide formula for calculating reimbursement rates.  This formula involved a host of inaccurate and unfavorable assumptions.

43.     Throughout the course of his employment, Plaintiff Matt Luiken has driven his personal vehicle, a 1997 Buick Century, to delivery pizzas.  Upon information and belief, the fuel economy of a 1997 Buick Century is 18 miles per gallon, a full 11.5 miles per gallon less than the 29.5 assumed under Defendant's Tiered Reimbursement Program.

44.     In addition to unreimbursed fuel, Plaintiff Matt Luiken also incurred other expenses that Defendant did not fully reimburse

45.     For example, during the pay period ending on November 16, 2008, Plaintiff Luiken incurred a $795.69 expense for repairing a turn signal; however, received only $82.85 in reimbursement for that pay period.

46.     As another example, during the pay period ending on February 22, 2009, Plaintiff Luiken incurred $847.42 in expenses for motor oil, washer fluid, wiper blades, battery and battery installation, transmission leaks, alignment check, sway bar, and a power steering leak; however, received only $60.42 in reimbursement for that pay period.

47.     As another example, Plaintiff Luiken incurred $753.40 in expenses during the pay period ending on April 5, 2009 for a wheel lift, water pump, belt, antifreeze, cooling system, break pads, bulb, rotors, tire repair, washer and transmission fluid, and gasoline; however received on $85.70 in reimbursement for that pay period.

48.     Plaintiff Luiken has also incurred additional costs for insurance and registration during the statutory period, neither of which Defendant fully reimbursed under the Tiered Reimbursement Program or otherwise.

49.     Throughout the course of his employment, Plaintiff Jon Sandquist drove his personal vehicle, a 1996 Volkswagon Jetta GLS, to delivery pizzas.  Upon information and belief, the fuel economy of a 1996 Volkswagon Getta GLS is 19 miles per gallon, a full 10.5 miles per gallon less than the 29.5 assumed under Defendant's Tiered Reimbursement Program.

50.     In addition to unreimbursed fuel, Plaintiff Jon Sandquist also incurred other expenses that Defendant did not fully reimburse.

51.     For example, during the pay period ending on December 17, 2006, Plaintiff
Sandquist incurred an $83.44 expense for a coolant hose; however, received only $2.75 in
reimbursement for that pay period.

52.     Plaintiff Sandquist has also incurred more than $903 for insurance and
additional costs for registration during the statutory period, neither of which Defendant
fully reimbursed under the Tiered Reimbursement Program or otherwise.

53.     Upon information and belief, the older a car is, the higher the cost of
driving the car due to factors such as lower fuel economy, greater maintenance
requirements, and higher depreciation.

54.     The average year of cars driven by Defendant's pizza delivery drivers is
many years older than a 2005 Toyota Corolla. In 2004, the last time Defendant compiled
the information in its files on the vehicles its drivers were driving, the average model year
of those vehicles was 1997.  In other words, in 2004, most drivers were driving a car that
was 7 years old or older.

55.     Upon information and belief, the Toyota Corolla is one of the two or three
least expensive cars to operate across the board when taking into account factors such as
maintenance, fuel economy, and depreciation.  It is not representative of the vehicles
driven by Defendant's delivery drivers.

56.     Upon information and belief, pizza deliver drivers incur higher automobile
costs than do typical drivers because of the unique driving conditions to which pizza
delivery drivers are subject.  For example, because drivers primarily deliver to residential
addresses, they drive more on city streets than they do highways.  Drivers also start and

stop their cars numerous times—ie, each time they make a delivery—causing their cars to never fully warm up and, consequently, lowering the car's fuel economy for those miles driven while the engine is still cool. Additionally, the constant starting and stopping, turning into driveways and onto city streets, and opening and closing of doors result in more wear and tear than a car used for non-delivery purposes would incur. Defendant's uniform reimbursement formula does not account for the difference between wear and tear which results from the way in which pizza delivery vehicles are used and the way standard automobiles are used.

57. These conditions of driving, in addition to the numerous miles driven solely for the purpose of serving Defendant's customers, result in more frequent  routine maintenance costs, costs due to repairs associated with driving, and the more rapid depreciation associated with driving a car as much as do and in the manner required as part of being pizza delivery drivers.

58. Defendant's Tiered Reimbursement Program, by applying a single reimbursement formula, not only failed to take into account the actual cars or mileage driven or actual expenses incurred by its drivers, but also, by assuming variables unfavorable to drivers, utterly failed to reflect the realities of drivers' expenditures.

59. Thus, the amount Plaintiffs, and on information and belief others similarly situated, and members of the Minnesota Rule 23 Class, were paid per trip was not sufficient to reimburse them for actual expenses incurred in delivering Defendant's pizzas.

60.     As a result of the being under-reimbursed, Plaintiffs and Members of the Minnesota Rule 23 Class were deprived of the minimum wages  guaranteed under federal and state law.

61.     Plaintiffs, others similarly situated, and members of the Minnesota Rule 23 Class, Plaintiffs were not reimbursed in any way other than the per trip delivery fee for expenses incurred in the delivery of Defendant's pizzas.

62.     Defendant charged Minnesota pizza delivery customers an amount identified as a "delivery charge" on the receipt provided to customers.

63.     Defendant retained the entirety of the "delivery charge."

64.     Plaintiff Sandquist and members of the Rule 23 class who are no longer employed by Defendant were not reimbursed for their travel expenses at the termination of their employment.

65.     Defendant does not maintain records of the actual travel expenses incurred by pizza delivery driver employees.

## NATIONWIDE FLSA COLLECTIVE ALLEGATIONS

66.     Plaintiffs, on behalf of themselves and all others similarly situated, re-allege and incorporate by reference the above paragraphs as set forth herein.

67.     Plaintiffs bring the First Claim for Relief on behalf of: "all persons who worked as Domino's pizza delivery drivers and were employed by Defendant at any time from three years prior to the filing of this Complaint to the entry of judgment in the case" (the "Nationwide FLSA Collective") against Defendant.

68.     Plaintiffs and the Nationwide FLSA Collective are victims of Defendant's widespread, repeated, and consistent illegal policy—namely the Tiered Reimbursement Program—that has resulted in violations of rights under the FLSA, 29 U.S.C. § 201 *et. seq.*, and that has caused significant damage to Plaintiffs and the Nationwide FLSA Collective.

69.     Defendant has willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et. seq.* as described in this Complaint in ways including, but not limited to, failing to pay employees a minimum wage and failing to reimburse employees for travel expenses.

70.     Defendant's conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

71.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the Nationwide FLSA Collective, and, as such, notice should be sent to the Nationwide FLSA Collective.  There are numerous similarly situated current and former employees of Defendant who have suffered from application of Defendant's Tiered Reimbursement Program, who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.  Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## MINNESOTA RULE 23 CLASS ALLEGATIONS

72.     Plaintiffs on behalf of themselves and all members of the proposed Minnesota Rule 23 Class, re-allege and incorporate by reference the above paragraphs as set forth herein.

73.     Plaintiffs bring the remaining Claims for Relief on behalf of themselves and as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  The Minnesota Rule 23 Class is defined as: "all persons who have worked as Domino's pizza delivery drivers in Minnesota from three years prior to the filing of this Complaint to the entry of judgment in the case" ("Minnesota Rule 23 Class").

74.     The persons in the Minnesota Rule 23 Class are so numerous that joinder of all members of the Minnesota Rule 23 Class is impracticable.  While the precise number of class members has not been determined at this time, upon information and belief, Defendant has employed in excess of four hundred (400) individuals as pizza delivery drivers in Minnesota during the applicable statute of limitations.  Plaintiffs and members of the Minnesota Rule 23 Class have been equally affected by Defendant's violations of law.

75.     There are questions of law and fact common to the Minnesota Rule 23 Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    Whether Defendant paid class members the minimum wage;

    b.    Whether Defendant made unlawful deductions from class members' pay for travel expenses incurred in the course of employment;

    c.    The proper measure of damages sustained by the Minnesota Rule 23 Class; and

14

    d.   Whether Defendant should be enjoined from such violations in the future.

76.    The Plaintiffs' claims are typical of those of the members of the Minnesota Rule 23 Class.  Plaintiffs, like the other members of the Minnesota Rule 23 Class, were subjected to Defendant's policies and willful practices of refusing to pay a minimum wage and unlawfully failing to reimburse employees for travel expenses incurred in the course of employment—specifically, under the uniformly-applied Tiered Reimbursement Program—as well as  requiring employees to contribute gratuities to a pool operated for the benefit of other the employer.  Plaintiffs and members of the Minnesota Rule 23 Class have sustained similar injuries as a result of Defendant's actions.

77.    Plaintiffs will fairly and adequately protect the interests of the Minnesota Rule 23 Class.  Plaintiffs have retained counsel experienced in complex wage and hour class and collective action litigation.

78.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3).

79.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant.

80.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

81.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because in the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate Defendant.  Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies.  There do not appear to be any difficulties in managing this class action.

82.     Plaintiffs intend to send notice to all members of the Minnesota Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

## CAUSES OF ACTION

### COUNT ONE—MINIMUM WAGE
**(Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)**
***On Behalf of Plaintiffs and the Nationwide FLSA Collective***

83.     Plaintiffs, on behalf of themselves and the Nationwide FLSA Collective, hereby repeat, re-allege, and incorporate by reference the forgoing paragraphs of this Complaint.

84.     This claim arises from Defendant's willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, for failure to pay a minimum wage to Plaintiffs and members of the Nationwide FLSA Collective to which they were entitled.

85.     At all times relevant, Defendant has been, and continue to be,  an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201, *et. seq.*  At all times relevant, Defendant has employed and continue to employ, employees, including Plaintiffs and each of the Nationwide FLSA Collective Plaintiffs, who engage or engaged in commerce or in the production of goods for commerce.  At all times relevant, upon information and belief, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.00.

86.     The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendant and protect Plaintiffs and the Nationwide FLSA Collective.

87.     Plaintiffs have consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).  As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

88.     Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiffs and the Nationwide FLSA Collective Plaintiffs were entitled to be compensated at a rate of $5.15 per hour before July 24, 2007; $5.85 per hour from July 24, 2007 to July 23, 2008, and $6.55 per hour beginning July 24, 2008.

89.     Defendant were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq.*

17

90.     Defendant, pursuant to their policies and practices, refused and failed to pay a minimum wage to Plaintiffs and the Nationwide FLSA Collective.

91.     By failing to compensate Plaintiffs and the Nationwide FLSA Collective, Defendant violated, and continue to violate, their statutory rights under FLSA, 29 U.S.C. § 206.

92.      The forgoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

93.     Plaintiffs, on behalf of themselves and the Nationwide FLSA Collective, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

94.     Plaintiffs, on behalf of themselves and the Nationwide FLSA Collective, seek recovery of attorney's fees and costs to be paid by Defendant as provided by the FLSA, 29 U.S.C. 201, et seq.

### COUNT TWO—MINIMUM WAGE
**(Minnesota Fair Labor Standards Act. Minn. Stat. § 177.21 *et. seq (Minn. Stat. § 177.24.)***
***On Behalf of Plaintiffs and the Minnesota Rule 23 Class***

95.     Plaintiffs and the Minnesota Rule 23 Class incorporate the above paragraphs by reference as if fully set forth herein.

96.     Plaintiffs and the Minnesota Rule 23 Class were or are employees of Defendant within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

97.     Defendant was or is the employer of Plaintiffs and the Minnesota Rule 23 Class within the meaning of Minn. Stat. § 177.23, Minn. Stat. § 177.24, and Minn. Stat. § 181.171(4).

98.     Defendant constitutes a "large employer" within the meaning of Minn. Stat. § 177.24 (1)(1).

99.     Pursuant to Minn. Stat. § 177.24, Plaintiffs were entitled to be paid no less than $6.15 per hour for each hour they worked for Defendant.

100.    Defendant failed to pay Plaintiffs the statutory minimum wage for all hours worked as required by Minn. Stat. § 177.24 (1)(1).

101.    As a direct result of Defendant's unlawful conduct, Plaintiffs and members of the Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

102.    Defendant's actions in violating the above named statute were willful and not the result of mistake or inadvertence.

### COUNT THREE—UNLAWFUL DEDUCTIONS
**(Minnesota Fair Labor Standards Act. Minn. Stat. § 177.21 *et. seq. (Minn. Stat. § 177.24))***
*On Behalf of Plaintiffs and the Minnesota Rule 23 Class*

103.    Plaintiffs and the Minnesota Rule 23 Class incorporate the above paragraphs by reference as if fully set forth herein.

104.    Plaintiffs and the Minnesota Rule 23 Class were or are employees of Defendant within the meaning of Minn. Stat. § 177.23, Minn. Stat. § 177.24 and Minn. Stat. § 181.79.

105.    Defendant is or was the employer of Plaintiffs and the Minnesota Rule 23 Class within the meaning of Minn. Stat. § 177.23, Minn. Stat. § 177.24 and Minn. Stat. § 181.79.

106.    Minn. Stat. § 177.24 states:

> Deductions, direct or indirect, for up to the full cost of the uniform or equipment as listed below, may not exceed $50. No deductions, direct or indirect, may be made for the items listed below which when subtracted from wages would reduce the wages below the minimum wage:
> (a) purchased or rented uniforms or specially designed clothing required by the employer, by the nature of the employment, or by statute as a condition of employment, which is not generally appropriate for use except in that employment;
> (b) purchased or rented equipment used in employment, except tools of a trade, a motor vehicle, or any other equipment which may be used outside the employment;
> (c) consumable supplies required in the course of that employment;
> (d) travel expenses in the course of employment except those incurred in traveling to and from the employee's residence and place of employment.
> Subd. 5. Expense reimbursement. An employer, at the termination of an employee's employment, must reimburse the full amount deducted, directly or indirectly, for any of the items listed in subdivision 4. When reimbursement is made, the employer may require the employee to surrender any existing items for which the employer provided reimbursement.

107.    By requiring Plaintiffs pay for their own travel expenses, Defendant unlawfully made a direct or indirect deduction from Plaintiffs' wages.

108.    By requiring Plaintiffs pay for their own travel expenses, Defendant unlawfully reduced Plaintiffs' wages below the minimum wage.

109.   Plaintiffs and members of the Minnesota Rule 23 Class were each subject to a deduction for travel expenses which exceeded $50.

110.   Plaintiffs and members of the Minnesota Rule 23 Class were not reimbursed for travel expense deductions at the termination of their employment.

111.   Defendant's actions in violating the above named statute were willful and not the result of mistake or inadvertence.

112.   As a direct result of Defendant's unlawful conduct, Plaintiffs and members of the Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

### COUNT FOUR—UNLAWFUL RETENTION OF GRATUITIES
**(Minnesota Fair Labor Standards Act. Minn. Stat. § 177.21 *et. seq.*)**
***On Behalf of Plaintiffs and the Minnesota Rule 23 Class***

83.   Plaintiffs and the Minnesota Rule 23 Class incorporate the above paragraphs by reference as if fully set forth herein.

84.   Plaintiffs and the Minnesota Rule 23 Class were, or are, Defendant's employees within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

85.   Defendant is or was the employer of Plaintiffs and the Minnesota Rule 23 Class within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

86.   Plaintiffs and the Minnesota Rule 23 Class received gratuities from customers for personal services rendered within the meaning of Minn. Stat. § 177.24.

87.   Defendant unlawfully required Plaintiffs and the Minnesota Rule 23 Class to contribute or share a gratuity received by them as employees with Defendant as their employer.

88.     Defendant unlawfully required Plaintiffs and the Minnesota Rule 23 Class to contribute any or all of a gratuity received by them as employees to a fund or pool operated for the benefit of the employer or other employees.

89.     Defendant's conduct in violation of Minn. Stat §177.24 was willful and not the result of mistake or negligence.

90.     Pursuant to Minn. Stat. § 177.24:

> …any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee.  No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees.

91.     By failing to treat Plaintiffs and the Minnesota Rule 23 Class's gratuities as property of the employees, Defendant violated Minn. Stat. § 177.24.

92.     By requiring Plaintiffs and the Minnesota Rule 23 Class to contribute and share gratuities received by them with the employer or other employees, Defendant violated Minn. Stat § 177.24.

93.     As a direct result of Defendant's conduct, Plaintiffs and the Minnesota Rule 23 Class were unjustly deprived of their rightful property.

94.     As a direct result of Defendant's unlawful conduct, Plaintiffs and members of the Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the Nationwide FLSA Collective and the Minnesota Rule 23 Class, pray for judgment against Defendant as follows:

a. Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all drivers who are currently employed or who were employed by Defendant during any portion of the three years immediately preceding the filing of this action.  Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b. Judgment against Defendant for an amount equal to Plaintiffs' unpaid back wages;

c. Judgment against Defendant that their  violations of the FLSA were willful;

d. An equal amount to the unpaid wage damages as liquidated damages;

e. To the extent liquidated damages are not awarded, an award of prejudgment interest;

f. All costs and attorneys' fees incurred in prosecuting these claims;

g. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

h. Leave to amend to add claims under applicable state laws; and

i. For class certification of the  Minnesota Rule 23 Class and for designation of Plaintiffs as class representatives and their counsel as class counsel;

j. For judgment that the conduct of Defendant as described herein be determined and adjudicated to be in violation of The Fair Labor Standards Act, the Minnesota Fair Labor Standards Act, and the Minnesota Payment of Wages Act; and

k. For injunctive relief requiring Defendant to appropriately reimburse employees in the future and forbidding Defendant from retaining Plaintiffs' gratuities; and

l.  For damages, liquidated damages, all available civil penalties, prejudgment interest; and

m.  That Plaintiffs and members of the Minnesota Rule 23 Class be awarded all attorney's fees, and all costs, disbursements, and witness fees incurred in the prosecution of this action; and

n.  For all such other legal and equitable relief available pursuant to applicable law; and

o.  For all such further relief as the Court deems equitable and just.


Dated: November 3, 2009                    NICHOLS KASTER, PLLP


                                           _____
                                           Anna P. Prakash (#0351362)
                                           Paul J. Lukas (#22084X)
                                           E.  Michelle Drake (#0387366)
                                           4600 IDS Center
                                           80 South 8th Street
                                           Minneapolis, MN  55402
                                           Telephone (612) 256-3200
                                           Fax (612) 338-4878

                                           ATTORNEYS FOR PLAINTIFFS