## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MATT LUIKEN AND JON SANDQUIST, on behalf of themselves, all others similarly situated, and the putative class, )<br><br>Plaintiffs, )<br><br>v. )<br><br>DOMINO'S PIZZA, LLC. )<br><br>Defendant. ) | Case No. 09-cv-00516 (DWF/AJB)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE** |

## I.   INTRODUCTION

Plaintiffs Matt Luiken and Jon Sandquist seek conditional certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., of a class consisting of all pizza delivery drivers employed by Defendant in any state except New York and California,[1] from March 4, 2006 to the present. Plaintiffs and putative class members were victims of a single policy which systematically under-reimbursed them for automobile expenses incurred in the course of their employment by Defendant. The FLSA requires employers to ensure that employees are paid the minimum wage "free and clear" of obligations to the employer.[2] 29 C.F.R. § 531.35.

---

[1] ███████████████████████████████████████████████

[2] See 29 U.S.C. § 206.  An employer may not deduct the cost of expenses which primarily benefit the employer from employee wages when such deductions drive wages below the federal minimum wage. See, e.g., Arriaga v. Florida Pac. Farms, LLC, 305 F.3d 1228, 1236 (11th Cir. 2002); Garcia v. Frog Island Seafood, Inc., 644 F.Supp.2d

Defendant's policy of under-reimbursement, combined with Defendant's practice of paying class members only the minimum wage to begin with, resulted in class members' net wages falling below the minimum wage. The fact that Defendant's FLSA violations resulted from a single policy means that class members are similarly situated for purposes of conditional certification and that Plaintiffs' motion should be granted.

## I.    LEGAL STANDARD

The FLSA specifically contemplates plaintiffs pursuing their claims collectively: "[a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216 (b). The United States Supreme Court has decided that to serve the "broad remedial goal" of the FLSA, and in light of the "wisdom and necessity for early judicial intervention," courts have the discretion to manage the notice process of a collective action under § 216(b) and provide prospective class members an opportunity to join. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171-173 (1989). Collective actions lower

---

696, 705 (E.D.N.C. 2009); 29 C.F.R. § 531.35; 29 C.F.R. § 531.36(b). This rule cannot be avoided by simply requiring employees to make such a purchase on their own, either in advance of or during the employment. Arriaga, 305 F.3d at 1236-37. There is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. Id. (shifting costs which primarily benefit the employer to the employee constitute "de facto deductions"); Garcia, 644 F.Supp.2d at 705-06 (same). Because Defendant paid delivery drivers an hourly rate close or equal to the federal minimum wage, and yet required Plaintiffs and putative class members to maintain and pay for delivery vehicles, automobile expenses paid for by delivery drivers which were not fully reimbursed constitute "deductions" from the minimum wage. See Arriaga, 305 F.3d at 1236.

individual costs through the pooling of resources, while the judicial system benefits by efficient resolution of multiple claims arising from the same alleged illegal activity. Id. at 170. These benefits depend on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. at 170-71.

This Court, like other courts, applies a two-step process for determining whether a case should ultimately be certified as a collective action. See e.g., Pagliolo v. Guidant Corp., No. 06-943 DWF/SRN, 2007 WL 2892400, at *2 (D. Minn. Sept. 28, 2007); Dege v. Hutchinson Tech., Inc., No. 06-3754 DWF/RLE, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007); Kalish v. High Tech Inst. , Inc., No. 04-1440 JRT/JSM, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005); Frank v. Gold'n Plump Poultry, Inc., No. 041018 JNE/RLE, 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005). At the first stage, the Court determines whether a collective action should be conditionally certified for the purposes of sending judicial notice and conducting discovery. Dege, 2007 WL 586787, at *1. This determination is made using a "fairly lenient" standard, and typically results in "conditional certification" of a representative class. Kalish, 2005 WL 1073645, at *1; see also Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 357 (E.D.N.Y. May 30, 2008) (conditionally certifying a class of Domino's Pizza delivery drivers and customer service representatives). Although lawyers and judges use the term "class," the lenient standard for conditional certification is much lower than the standard used for certifying a "class" under Fed. R. Civ. Proc. 23. See Fed. R. Civ. Proc. 23. At the second stage of conditional certification, which occurs after discovery is complete, the Court revisits the

issue of certification to determine if the case should proceed to trial collectively, or if it should be severed. Frank, 2005 WL 2240336, at *2.

At the first stage, Plaintiffs need only establish a "colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." Dege, 2007 WL 586787 at *1. A "colorable basis" simply means that plaintiffs provide evidence beyond the "mere averments" in their complaint. Severtson v. Phillips Beverage Co., 141 F.R.D 276, 279 (D. Minn. 1992). Plaintiffs' burden of establishing a colorable basis for their claims is "not a difficult one" to meet. See id. Some evidence showing a "common policy or plan" is enough to satisfy Plaintiffs' burden at this stage. See id. at 280; see also Resendiz-Ramirez v. P&H Forestry, LLC, 515 F.Supp.2d 937, 941-42 (W.D. Ark. 2007) (conditionally certifying a class of agricultural workers alleging they were subject to the defendant's common policy which failed to reimburse them for travel expenses); Dege, 2007 WL 586787 at *2 (finding that plaintiffs' affidavits alleging similar treatment alone established a colorable basis); Frank, 2005 WL 2240336 at 3 (finding representative plaintiffs' averments that they were denied pay for donning and doffing meets the low, first-stage burden).

## II.     COLORABLE BASIS THAT DELIVERY DRIVERS WERE THE VICTIMS OF A SINGLE POLICY[3]

---

[3] This is not a statement of undisputed facts, but rather, a statement of evidence beyond the mere averments in Plaintiffs' complaint establishing a colorable basis that delivery drivers were subject to a uniform policy. See Dege v. Hutchinson Tech., Inc., No. 06-3754 DWF/RLE, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007); Severtson v. Phillips Beverage Co., 141 F.R.D 276, 279 (D. Minn. 1992).

## A. PLAINTIFFS ARE SIMILARLY SITUATED WITH RESPECT TO JOB DUTIES, REQUIRED EXPENDITURES AND BASE WAGES.

During the relevant time period, Defendant has operated approximately 575 pizza stores clustered around eleven major metropolitan areas. (See Abraham Dep. 56, Sept. 11, 2009, Ex. 1; Email Mike Bassi to Joe Paweski, Oct. 29, 2004, Ex. 2; Delivery Mileage Reimbursement Change, Ex. 3.) Plaintiffs Matt Luiken and Jon Sandquist are/were employed as pizza delivery drivers for Defendant. (Luiken Dep. 14, Sept. 28, 2009, Ex. 4; Sandquist Employee Data Summary, Ex. 5.) Fourteen pizza delivery drivers who worked in four different states have joined this action by filing written consents with the Court (collectively, "Plaintiffs"). (Notices of Consent Filing, Dkts. 4, 17, 18, 20, 21, 23, 24, 32, 43, 101, 121, and 126.)

Delivery drivers' main job duty was delivering pizza and other food items to customers. (Delivery Driver Job Description, Ex. 6.) Rather than maintain its own fleet of vehicles to deliver its products to its customers, Defendant required its delivery drivers to maintain and pay for operable, safe and legally-compliant vehicles. (Abraham Dep. 14, 91-92, Ex. 1; Domino's Pizza Policy Manual Section 3.5, MVR Standards, Ex. 7.) To maintain their vehicles in accordance with Defendant's requirements, delivery drivers had to purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, and insurance, as well as suffer automobile depreciation, all for the primary benefit of Defendant. (See, e.g., Luiken Dep. 7, 48-49, 69-70, 76, 153-55, Ex. 4.)

████████████████████████████████████████████

████████████████████████████ (Abraham Dep. 95, Ex. 1.) However, Plaintiffs

allege that because Defendant failed to fully reimburse them for their automobile related expenses, their compensation fell below the minimum wage. (See First Am. Compl. §§ 1-3, Dkt 85.)[4]



**B.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮.[5][6]  (Abraham Dep. 18-20, 29, Ex. 1.)  ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Email Bassi to Paweski, Ex. 2) (emphasis added.)  ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮.[7]  (Abraham Dep. 39-40, Ex. 1)  ▮▮▮▮▮▮▮

---

[4] (See also Luiken Dep. 6-7, 130, Ex. 4; Sandquist Dep. 47, Sept. 24, 2009, Ex. 8; Rebecca St. Clair Consent, Dkt. 18; Bradley O'Conner Consent, Dkt. 20; Aaron Johnson Consent, Dkt. 21; Antone Hammers Consent, Dkt. 23; Trevor McDowell Consent, Dkt. 24; Zach Crader Consent, Dkt. 32; Daniel Kasper Consent, Dkt. 32; Todd Stiebinger Consent, Dkt. 43; Andrew Meeks Consent, Dkt. 21; Robert Copeland Consent, Dkt. 126; Lisa Byrum Consent, Dkt. 126.)

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Abraham Dep. 12, Ex. 1.)  Consequently, Plaintiffs are seeking certification of a class of delivery drivers who worked for Defendant in states other than New York and California.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
(Abraham Dep. 20, Ex. 1.)

[7] A "single" delivery is a delivery trip where the driver makes one stop before returning to the store. A "double" delivery is a delivery trip where the driver makes two stops

███████████████████████████████████████████████████

████████████████████████████████████. (See Abraham Dep. 44-45,

Ex. 1; Tiered Mileage Reimbursement Managers Reference Guide, Ex. 9; What's New in

Domino's Pulse Version 3.2, Tiered Mileage, Ex. 10.) ███████████████████

███████████████████████████████████████████████████

███████████████████████████████. (Hammers Dep. Oct. 28, 2009, 233,

Ex. 11; see also Spreadsheet of Run Counts, Ex. 12.) ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████[8]

    Defendant used a single formula to determine the applicable per delivery rate for

each store. (See Delivery Mileage Reimbursement Change, Ex. 3; Abraham Dep. 18, Ex.

---

before returning to the store.  (Abraham Dep. 39-40, Ex. 1.)  Despite the fact that
Defendant maintains records of customer addresses and orders to those addresses,
allowing it to calculate miles driven, Defendant reimburses its drivers based only on the
number of orders they deliver per trip, not based on actual miles driven. (Id. at 42-46.)

[8]
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

1.) ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████. (Delivery Mileage Reimbursement Change,

Ex. 3.) ████████████████████████████████████████████

████████████████████████████████████████████████. (Id.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. (Id.)

## C. DEFENDANT'S TIERED REIMBURSEMENT PROGRAM FAILED TO REFLECT REALITY.

Vehicle operating costs can be divided into fixed costs (insurance, registration, depreciation) and variable costs (fuel, maintenance, repairs). (Def.'s Expert Rprt. Nov. 11, 2009, 1, Ex. 16; Pls.' Expert Rprt. Nov. 11, 2009, 3, Ex. 17.) Each and every one of Defendant's cost assumptions was based on the premise that delivery drivers were driving a ███████████████████. (See Abraham Dep. 18-21, Ex. 1; Runzheimer Report, Feb. 23, 2005, Ex. 18; Runzheimer Report, Apr. 12, 2005, Ex. 19; Email Mike Bassi to Karen Hainen, Dec. 14, 2004, Ex. 20.) ██████████████████████ ██████████████████████████████████. (Delivery Mileage Reimbursement Change, Ex. 15; Abraham Dep. 69-70, Ex. 1; Domino's Pizza Tiered Mileage Analysis Team USA, June 19, 2007, 7, Ex. 21; Abraham Dec. Feb. 19, 2010, Ex. 22.) ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. (See Runzheimer Report, Feb. 23, 2005, Ex. 18;

Runzheimer Report, Apr. 12, 2005, Ex. 19; Delivery Mileage Reimbursement Change,

Ex. 15; Abraham Dep. 18, Ex. 1.)

Defendant's decision to base its reimbursement formula on the assumption that ██

████████████████████████████████████████████████████

████████████, resulted in systematic under-reimbursement of drivers' actual

expenses. (See Pls.' Expert Rprt. 11, Ex. 17; Abraham Dep. 18-21, Ex. 1; Austin Dep.

154, 179-81, Jan. 21, 2010, Ex. 23.)   According to a study done by Runzheimer

International of thirty different vehicles, the ██████████ "is the least expensive to

operate." (Analysis of 2009 Car, Van, Light Truck Costs, Ex. 24, also available at

http://www.runzheimer.com/news/news.2008.11.15.analysisof2009carvanlighttruckcosts.

aspx.) The costs of operating a ████████ are systematically less than the costs

actually incurred by Defendant's delivery drivers. (See id; Pls.' Expert Rprt. at 2-3, Ex.

17; Austin Dep. 154, 204-05, Ex. 23.)

One reason that Domino's choice of a ██████████████ is so unfavorable

to class members is because the fuel economy that Defendant attributes to the ██

██████████ bears no relationship to the fuel economy actually experienced by

pizza delivery drivers. Defendant's hypothetical delivery drivers get at least 29 miles per

gallon while they deliver pizzas in their hypothetical ████████████. (Abraham

Dep. 18-21, Ex. 1; Pls.' Expert Rprt. 2, Ex. 17.) ██████████████████

████████████████████████████████████████████████████



█████████.[9] (Pls.' Expert Rprt. 2, Ex 17; Austin Dep. 104-06, Ex. 23.) ████████

█████████████████████████████████████████████████████████████████████████

██████ (Pls.' Expert Rprt. 2, Ex. 17; <u>see also</u> Austin Dep. 202-03, Ex. 23.)

Defendant's hypothetical delivery drivers also experience exceptionally low

maintenance costs per mile. Unlike a ████████████, purchased new, ████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████ (<u>See</u> Table of Delivery Vehicles, Ex.

29; Pls.' Expert Rprt. 3, 11, Ex. 17; Austin Dep. 204-05, Ex. 23)  Not surprisingly, older

vehicles are more expensive to maintain than newer vehicles. (Pls.' Expert Rprt. 3, Ex.

17; Austin Dep. 77, Ex. 23.) ████████████████████████████

---

[9] Adding insult to injury, Defendant also relied on outdated Environmental Protection Agency ("EPA") data regarding fuel economy, such that even a driver who was actually driving a ████████████████ could not have expected to get the fuel economy assumed by Defendant. (Abraham Dep. 48-49, 55-56, 131, Ex. 1; Austin Dep. 154-55, Ex. 23.) █████████████████████████████████████████████████████████ █████████████████████████████████████████████████ (<u>See</u> Mileage Estimation Program, Ex. 25.)  Additionally, Plaintiffs contend that once the nature of the driving at issue is taken into account, the number of drivers' vehicles actually achieving a 29 mile per gallon fuel efficiency is likely zero.  The nature of driving in the pizza delivery business lowers the fuel economy obtained by the average driver. (<u>See</u> Austin Dep. 104-15, Ex. 23.)  Because Defendant's drivers primarily deliver to residential addresses, they drive more on city streets than they do highways. (<u>See</u> Luiken Dep. 85-86, Ex. 4; Sandquist Dep. 232, Ex. 8; Hammers Dep. 225, Oct. 29, 2009, Ex. 11; Crader Dep. 130, Oct. 9, 2009, Ex. 26; Kasper Dep. 19-20, 62-64, 98, Oct. 23, 2009, Ex. 27.) Drivers also start and stop their cars numerous times – i.e., each time they make a delivery – causing their cars to never fully warm up and, consequently, lowering the car's fuel economy for those miles driven while the engine is still cool. (<u>See</u> Luiken Dep. 293; Hammers Dep. 74; Crader Dep. 170; Kasper Dep. 19-20, 62-64, 84-85, 98, St. Clair Dep., 76-77, 207, Oct. 27, 2009, Ex. 28.)

████████████████████████████████████████████ (Pls.'

Expert Rprt. 3, Ex. 17; Austin Dep. 180, Ex. 23.)

     There was no need for Defendant to make such unreasonable assumptions in its

reimbursement formula. ████████████████████████████████████

████████████████████████████████████████████████.

(Abraham Dep. 123, Ex. 1; Table of Delivery Vehicles, Ex. 29.)  Defendant's flawed

assumptions significantly reduced the reimbursement rates that delivery drivers received.

████████████████████████████████████████████████

████████████████████████████ (See Pls.' Expert Rprt. at 12, Ex.

17.)

     Defendant also systematically overestimated the number of miles driven by its

delivery drivers, resulting in the per-mile reimbursement being artificially low.  (See

Austin Dep., 124-30, 187-88, Ex. 23.) ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████. (See

Runzheimer Report, Feb. 23, 2005, Ex. 18; Runzheimer Report, Apr. 12, 2005, Ex. 19;

Email Bassi to Hainen, Ex. 20; Domino's Pizza Tiered Mileage Analysis Team USA,

June 19, 2007, 7, Ex. 21; Abraham Dec. Feb. 19, 2010, Ex. 22.)  However, according to

the National Transportation Energy Book, the average annual distance driven by eight

year old cars is approximately 11,000 miles per year.  (See National Transportation

Energy Book, Table 3.7, Ex. 30.) ████████████████████████

████████████████████████████████████████████████

███████████████████████████████████.[10]   (Austin Dep. 187-88, Ex. 23.)

Defendant's policy was made even more unreasonable for all delivery drivers by the fact that Defendant failed to update both its variable and fixed cost assumptions routinely. ██████████████████████████████████████████ ████████████████████████████████████████████████.

(Abraham Dep. 49-51, 117-18, Ex. 1.)  Notably, Runzheimer International, the company that provided the data upon which Defendant relied in calculating reimbursement rates, recommends updating fuel price assumptions monthly, which is necessary because fuel prices rise and fall so frequently.  (Abraham Dep. 20-22, Ex. 1; Czarapata Dep. 47-48, Jan. 19, 2010, Ex. 31; see Runzheimer Report, Feb. 23, 2005, Ex. 18.)  By failing to update its fuel assumptions regularly, Defendant further insured that its cost estimates were not representative of reality. ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ (See Fuel Price Trend Chart, Ex. 32; Reimbursement Rate Changes, Ex. 33; Energy Information Administration Retail

---

[10] ████████████████████████████████████████████████ ████████████████████████████████████████████████
████████████████████████████████████████████████ (See

Austin Dep. 124-30, Ex. 23.)

Gasoline                          Historical                          Prices,

http://www.eia.doe.gov/oil_gas/petroleum/data_publications/wrgp/mogas_history.html.)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████ (See Domino's Pizza Tiered Mileage Analysis Team USA,

7, Ex. 21; Spreadsheet of Fuel Prices, Ex. 34; Abraham Dec. Feb. 19, 2010, Ex. 22.)

████████████████████████████████████████

████████████████████████████ (Domino's Pizza Tiered Mileage Analysis

Team USA 7, Ex. 21.) ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████ (Domino's Pizza

Tiered Mileage Analysis Team USA 7, Ex. 21.)[11]

-----

[11] ████████████████████████████████████████████

████████████████████████████████████



(Abraham Dep. 33-34, Ex. 1.)

(See

Czarapata Dep. 38-41, Ex. 31.)

(See id; Austin Dep. 180-81, Ex. 23.)

In sum, Defendant used a plethora of assumptions that were unfavorable to drivers resulting in a policy so grossly unreasonable that it could not fully reimburse any delivery driver for his actual expenses.[12]

### III.   LEGAL ARGUMENT

#### A. PLAINTIFFS EASILY MEET THE LENIENT STANDARD OF SHOWING THEY ARE "SIMILARLY SITUATED" TO THE PUTATIVE CLASS MEMBERS.

---

[12] To understand how it is that Defendant arrived at this policy, it is important to understand the historical context in which Defendant's reimbursement program was developed.

(Id.; Email Brant Lance to Mark Davidson, April 24, 2008, Ex. 35.) Defendant's concern was not, and never has been, ensuring that drivers were reimbursed for their expenses.

. (See generally Abraham Dep., especially 27-29, 39-40, 65-66, 77-82, Ex. 1.)

Plaintiffs have clearly established a "colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." See Dege v. Hutchinson Tech., Inc., No. 06-3754 DWF/RLE, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007).  Plaintiffs and putative class members held the same job position, shared the same job duties, and incurred job-related expenses that were not fully reimbursed. Defendant deprived delivery drivers of the minimum wage in the same manner: by systematically failing to adequately reimburse them for job-related expenses through its TRP.  As such, Plaintiffs and putative class members are similarly situated, warranting conditional certification.

1. **Plaintiffs and Putative Class Members are Similarly Situated Because Defendant Subjected Them to a Common Reimbursement Policy.**

a. **Defendant's Reimbursement Policy Applied in the Same Manner to Everyone.**

Courts routinely certify cases in which plaintiffs allege they were not properly reimbursed.  Using a much higher class certification standard pursuant to California Code of Civil Procedure § 382, a California court recently granted class certification to a group of pizza delivery drivers alleging violations of state wage law, finding the named Plaintiff was typical of the class because he and the class members "were subject to the same automobile reimbursement plan, i.e., paid a lump-sum for each order delivered." Velasquez v. PJ's Pizza, Inc., No. BC351461, 4, 10 (Cal. Super. Ct. Oct. 1, 2009), Ex. 36; see also Resendiz-Ramirez v. P&H Forestry, LLC, 515 F.Supp.2d 937, 941-42 (W.D. Ark. 2007) (finding that agricultural worker's, despite some factual differences, were

15

similarly situated under the FLSA because they were all victims of the defendant's common policy of failing to reimburse them for various expenses incurring in traveling to the United States and gaining a VISA in order to accept the employment); Ojeda-Sanchez v. Bland, No. 608CV096, 2009 WL 3851623 (S.D. Ga. Nov. 17, 2009) (conditionally certifying a class of agricultural workers alleging FLSA minimum wage violations based upon the defendant's policy of failing to reimburse expenses incurred for the benefit of the employer); Pablo Arriaga-Zacarias, et al v. Lewis Taylor Farms, Inc., et al, Case 7:08-cv-00032-HL (M.D. Ga. Dec. 4, 2008), Ex. 37 (same); De Luna-Guerrero v. The N.C. Grower's Ass'n, Inc., 338 F.Supp.2d 649 (E.D.N.C. 2004) (same). Like the plaintiffs in these cases, Plaintiffs are similarly situated because Defendant subjected them to a common reimbursement policy.

Courts in this District have found employees who worked in different geographical areas to be similarly situated when they were subject to a uniform policy. See, e.g., Brennan v. Qwest Commc'ns Int'l, Inc., No. 07-2024 ADM/JSM, 2008 WL 819773, at *4 (D. Minn. Mar. 25, 2008) (certifying a class of employees with the same job position who worked at different locations in different geographical areas with different supervisors because they were all subject to the defendant's common plan depriving them of overtime pay for "off-the-clock" work); Frank v. Gold'n Plump Poultry, Inc., No. 041018 JNE/RLE, 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005) (same); Kalish v. High Tech Institute, Inc., No. 04-1440 JRT/JSM, 2005 WL 1073645, at *4 (D. Minn. Apr. 22, 2005) (conditionally certifying a nationwide collective of 400 to 600 teachers who worked at seventeen different locations in twelve different states

because, while there were some differences in the teacher's compensation at different schools, there was a unified corporate policy to which the teachers at every school were subject).

This case is similar to the facts in <u>Kalish</u>, <u>Frank</u>, and <u>Brennan</u>, because Defendant subjected delivery drivers to a common corporate reimbursement policy and geographical differences did not make the policy disparate.



).)

### b. Defendant's Reimbursement Policy Uniformly Failed to Adequately Reimburse Driver's Expenses.

Defendant's policy is so grossly unfavorable to drivers that it ensured none of its drivers were fully reimbursed for their expenses, obviating the need for individual inquiry into any particular driver's actual expenses. Defendant's policy was unfavorable to all delivery drivers in several respects:

(1) Defendant based cost estimates on a hypothetical vehicle truly unrepresentative of those vehicles driven by is pizza delivery drivers, which resulted in systematically overestimating the fuel economy of its drivers' vehicles and systematically underestimating the maintenance costs its drivers incurred;



(2) ███████████████████████████████

███████████████████████████████

███ ;

(3) ███████████████████████████████

█████████████████████████ ;

(4) ████████████████████████████ ; and

(5) ██████████████████████████████

█████████████████████████████████

████████████ . (See supra Section (III)(C).)

Because Defendant's policy was so grossly unfavorable to all drivers, an individualized inquiry will not be necessary to show that Defendant's policy reimbursed drivers at a rate far below their actual expenses.

### c. Minor Variations in Class Members' Base Pay Should Not Defeat Certification.

Certification of the entire class is appropriate because Defendant subjected the entire class to its TRP. █████████████████████████████████████

███████████████████████████████████.[13] (See Abraham Dep.

---

[13] Almost all of the states in which Defendant operated stores had a state minimum wage equal to the federal minimum wage during some or all of the relevant time period. These states include: Alabama, Arizona, Georgia, Maryland, Nevada, Tennessee, Utah, Virginia, Florida, New Jersey, and Minnesota. The only state that had a state minimum wage higher than the federal minimum wage during the entire relevant time period is

95, Ex. 1.) The fact that Defendant has under-reimbursed some drivers more so than others is a damages issue, not a liability issue, and certainly not an issue to be addressed at conditional class certification. See Brown v. Money Tree Mortg. Inc., 222 F.R.D. 676, 682 (D. Kan. 2004) (quoting Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 629 (D. Colo. 2002)) ("it is well established that individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit"). For discovery purposes, it is certainly more efficient to keep the class together.

Alternatively, even if the Court finds variations in driver's base pay to be relevant at the conditional certification stage, the Court could either conditionally certify state-based subclasses or conditionally certify a class consisting only of drivers who received an hourly rate equal to the federal minimum wage for some period of their employment.

---

Washington. During the relevant time period, Washington's minimum wage ranged from $1.30 to $2.78 over the federal minimum wage. (See Chart of federal and state minimum wages, Ex. 38; Ariz. Rev. Stat. Ann. § 23-363; Ga. Code Ann. § 34-4-3; Md. Code Ann. § 3-413; Nev. Rev. Stat. § 608.250; Utah Code Ann. § 34-40-103; Fla. Stat. § 448.110; N.J. Stat. Ann. § 34:11-56a4; Minn. Stat. § 177.24; U.S. Dep't Labor State Min. Wage July 24, 2009, Ex. 39; U.S. Dep't Labor Fed. Min. Wage Historical Chart Including 2009, Ex. 40; U.S. Dep't Labor Historical Table State Min. Wage, http://www.dol.gov/whd/state/stateMinWageHis.htm; U.S. Dep't Labor State Min. Wage Current, http://www.dol.gov/whd/minwage/america.htm; U.S. Dep't Labor Fed. Min. Wage Current, http://www.dol.gov/whd/minwage/q-a.htm; Labor Law Center Website, http://www.laborlawcenter.com/t-State-Minimum-Wage-Rates.aspx; Al. Dep't of Labor Website, http://www.alalabor.state.al.us/FAQ.htm; Tenn. Dep't of Labor & Workforce Dev. Website, http://www.tn.gov/labor-wfd/faq_laws.html#prevailingwage; Va. Dep't of Labor and Industry Website, http://www.doli.virginia.gov/laborlaw/laborlaw_faqs_wagep1.html.)

## 2.  Liability Can Be Determined Class-Wide.

The standard for determining liability in this case will largely be a matter of first impression.  While federal courts have certified and evaluated minimum wage cases based on unlawful deductions, federal courts have not previously analyzed a class case where the plaintiffs allege their employer's failure to reimburse automobile expenses constituted de facto deductions from the minimum wage.  The Court may determine whether Defendant adequately reimbursed its drivers in at least three different ways.  First, the Court may ask whether Defendant reimbursed the drivers at a rate equal to the federal mileage rate.  Second, the Court may ask whether Defendant reimbursed drivers for their actual expenses.  Third, the Court may ask whether Defendant's reimbursement rate "was reasonably approximate or greater than the typical driver's anticipated expenses."  (See Def.'s Expert Rebuttal Rprt. 4, Dec. 2, 2009, Ex. 15.)  Under any of these three methods, Defendant's reimbursement policy fails with respect to all delivery drivers, and so liability can be determined class-wide.

### a.  Defendant's Reimbursement Rate Falls Far Below the Presumptively Reasonable Federal Mileage Rate.

The Department of Labor's Field Operations Handbook says that the IRS standard business mileage rate "may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes." (June 30, 2000, Section 30c15.)  California courts, which have analyzed the question of mileage reimbursement under state law and provide the only published legal framework for this analysis, agree with the Department of Labor and have acknowledged that the

IRS per-mile reimbursement rate is an acceptable way for employers to reimburse their employees.  <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, 169 P.3d 889, 898 (Cal. 2007). Under this analysis, Defendant violated the FLSA because its reimbursement rate, when calculated on a per mile basis, falls far below the presumptively reasonable IRS rate.

█████████████████████████████████████████████████████████████

██████████████████████████  (Delivery Mileage Reimbursement Change, Ex. 15.)  In contrast, the federal mileage reimbursement rate for businesses, averaged for the period of Mar. 4, 2006 – Feb. 22, 2010, has been approximately 51 cents per mile.  (<u>See</u> IRS Website,              Standard              Mileage              Rates, http://www.irs.gov/taxpros/article/0,,id=156624,00.html.)

Defendant easily could have reimbursed its drivers at the IRS rate, but it chose not to do so for one simple reason: it would have cost Defendant more to do so.  (<u>See</u> Driver Mileage Possible Approaches Memorandum, Ex. 47.)    At all times, Defendant's motivation has been, not to fairly reimburse its drivers, but to choose the reimbursement method that was most helpful to its bottom line.  (<u>See</u> Domino's Pizza Tiered Mileage Analysis Team USA 7, Ex. 21.)  ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████.

### b. Defendant Did Not Reimburse Drivers for Their Actual Expenses.

Defendant made no attempt whatsoever to reimburse drivers for their actual expenses.  Defendant did not track driver's expenses in any way.  (Abraham Dep. 15-16,

Ex. 1.)  Plaintiffs intend to show that the cost assumptions used by Defendant were so unfavorable to drivers that an individualized inquiry is not required to determine that Defendant failed to compensate drivers for their actual expenses.  (See supra Section (III)(C); Czarapata Dep. 26-27, Ex. 31 (███████████████████████████████████████████████████████████████████████████████████).)

Not only did Defendant fail to utilize a method based on actual expenses, Defendant has also argued in this case it had no duty to track or reimburse actual expenses.  (See Def. Mem. Law Support Mot. Dismiss 6-9, May 15, 2009, Dkt. 28.)  Since Defendant did not attempt to reimburse their actual expenses and therefore did not ask drivers to submit or keep records of individual expenses (Abraham Dep. 15, Ex. 1), it would be disingenuous for Defendant to now claim this is the appropriate benchmark for whether Defendant has met its minimum wage obligations.  In apparent agreement, this Court has already denied Defendant's motion to compel documents related to the actual expenses of Plaintiffs' vehicles, finding that such documents are not relevant to conditional certification.  (Order Den. Def.'s Mot. Compel Dec. 2, 2009, 9-10, Dkt. 122.)  Regardless, even if the Court finds that actual expenses are the appropriate benchmark for determining Defendant's compliance with the law, Plaintiffs intend to show that Defendant's assumptions bore so little relation to reality that drivers could not possibly have been reimbursed for their actual expenses. Indeed, ████████████████████

### c. Defendant's Overall Reimbursement Rate Was Not "Reasonably Approximate or Greater Than the Typical Driver's Anticipated Expenses."

Even under the standard that Defendant developed to defend its reimbursement policy, Defendant's policy is unlawful because it does not do what Defendant claims it does: reasonably approximate the typical driver's anticipated expenses. (See Def.'s Expert Rebuttal Rprt. 4, Dec. 2, 2009 Ex. 15; Pls.' Expert Rprt 2-3, Ex. 17; supra Section (III)(C).) If Defendant wanted to use cost estimates truly representative of the typical delivery driver, it could have calculated cost estimates based on a mini-fleet of eight year old vehicles. (Austin Dep. 204-05, Ex. 23.) Because Defendant's assumptions were so entirely atypical, it is not possible that Defendant's overall reimbursement rate "was reasonably approximate or greater than the typical driver's anticipated expenses." (See Def.'s Expert Rebuttal Rprt. 4, Ex. 15; Pls.' Expert Rprt 2-3, Ex. 17.)

## B. PLAINTIFFS' CASE IS APPROPRIATE FOR JUDICIAL NOTICE.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170. The Court in Hoffmann-La Roche established that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases," the determination of which it left to the discretion of the courts. Id. at 169-70. This is an appropriate case to send court-approved notice for several reasons.

### 1.  The Running of the Statute of Limitations.

Prompt court action is needed here because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations on their claims.  See Redman v. U.S. West Bus. Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998).  Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action, and the statute of limitations continues to run on each individual's claim until they file a consent form with the Court.  Redman, 153 F.3d at 695.  Court-facilitated notice will prevent the continued erosion of these individual's claims.  See Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995).

### 2.  Promotion of Judicial Economies.

Judicial notice would provide delivery drivers with an opportunity to pursue their claims in one forum, thereby promoting the significant judicial economies recognized in Hoffmann-La Roche, 493 U.S. at 170-71.  Identical issues of law and fact amongst all of Defendant's delivery drivers in one action benefits the judicial system by resolving this case collectively.   See Hoffmann-La Roche, 493 U.S. at 170.   Such collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.

### 3.  Other Interested Delivery Drivers.

Other delivery drivers employed by Defendant have expressed their desire to take part in this action.  To date, fourteen individuals have opted-in to the case by filing a consent form with the Court.  (See Notices of Consent Filing, Dkts. 4, 17, 18, 20, 21, 23,

24, 32, 43, 101, 121, and 126.)  Many other potential class members undoubtedly exist as Defendant has operated approximately 575 stores nationwide.  (See Email Bassi to Paweski, Ex. 2.)  Judicial notice will ensure that individuals who cannot be reached by word of mouth alone will have the opportunity to take part in this lawsuit.

### 4.  Plaintiffs' Notice is Accurate and Informative.

Plaintiffs' proposed judicial notice, attached as Exhibit 41, it is "timely, accurate, and informative."  See Hoffmann-La Roche, 493 U.S. at 172.  It is carefully drafted to mirror the notice form in Saunders et al. v. Ace Mortg. Funding et al., No. 0:05-cv-01437-DWF-SRN, that this Court has previously approved.[14]  (See Saunders Order and Judicial Notice, Ex. 43.)  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

Plaintiffs request that the Court Order a ninety-day notice period for putative class members to join the case.  Such request has been repeatedly accepted by courts around the country, including in this District.  See, e.g, Carter v. Anderson Merchandisers, LP, EDCV 08-25-VAP (OPx), 2008 WL 2783193 (C.D. Cal. July 10, 2008) (granting conditional certification and allowing a ninety-day notice period); Fenton v. Farmers Ins. Exch., No. 07-4864 JRT/FLN (D. Minn. May 15, 2008), aff'd, 07-04864 JRT/FLN (D. Minn Oct. 24, 2008), Ex. 44 (same).

Attached as Exhibit 45, is Plaintiffs' proposed reminder notice with a consent form.  Plaintiffs request that on or about the sixty-fifth day of the ninety-day notice

---

[14] See also Examples of Court Approved Notice, Ex. 42.

period, a reminder notice be sent by Plaintiffs' counsel to the putative class to ensure those who wish to join the case do, in fact, file a consent form. See Loomis v. CUSA, LLC., No. 0:09-cv-00026-RHK-AJB (D. Minn. July 2, 2009), Ex. 46 (order granting plaintiffs' request that Court-authorized notice pursuant to 29 U.S.C. § 216(b) include a reminder notice).

## C. DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS AND INTERNET POSTING OF NOTICE IS NECESSARY TO CARRY OUT NOTICE.

As discussed above, all delivery drivers employed by Defendant within the applicable time period are "similarly situated" employees for purposes of the FLSA. The identification of these individuals is necessary for Plaintiffs to provide those individuals with notice of the action as contemplated by the FLSA. See Hoffmann-La Roche, 493 U.S. at 170 (affirming that the district court correctly permitted discovery of the names and addresses of the employees). This is precisely the reason why the production of a mailing list containing potential class members is routinely disclosed in FLSA collective actions.[15]   Id. at 165; see Burch, 500 F.Supp.2d at 1191 (ordering the defendants to produce, in electronic format, a list of putative class members' names, addresses, dates of

---

[15] Moreover, the identity of putative class members is discoverable on other grounds. See Hoffmann-La Roche, 493 U.S. at 170 (acknowledging the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter"). Further, a court need not find potential class members similarly situated before ordering disclosure of the names and addresses. See Bailey v. Ameriquest Mortg. Co., No. CIV. 01-545 JRT/FLN, 2002 WL 100388, *2 (D. Minn. Jan. 23, 2002) (citing Hoffmann-La Roche, 493 U.S. at 170).

employment, locations of employment, last four digits of social security numbers, and dates of birth).   Accordingly, Plaintiffs' respectfully request that the Court order Defendant to provide Plaintiffs with a list of all putative class members, including for each his/her name, last known address, telephone number, dates of employment, location of employment, employee number, and last four digits of his/her social security number.

In order to effectuate notice, Plaintiffs further request that they be allowed to post the notice on Plaintiffs' Counsel's website.  In this age of the internet, an online posting will aid in notifying class members of their rights.

### IV.   CONCLUSION

Plaintiffs and putative class members are similarly situated because Defendants subjected them to a uniform policy which deprived them of the minimum wage as required by the FLSA.   Defendant's reimbursement policy ████████████ ████████████████████████████████████████ ███████████████████████████████████, causing drivers' compensation to fall below the minimum wage.  Plaintiffs respectfully request that the Court grant their motion for conditional certification and Court-authorized notice, and order Defendant to provide a list of putative class members in order to facilitate such notice.

Dated: March 1, 2010

NICHOLS KASTER, PLLP

/s/ E. Michelle Drake

Paul J. Lukas (MN Bar No.: 22084X)
E.  Michelle Drake (MN Bar No.: 0387366)
Anna P. Prakash (MN Bar No.: 0351362)
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 338-4878

Jodi L. Collova (CA Bar No.: 261505)
(admitted *pro hac vice*)
Nichols Kaster, LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94108
Telephone (415) 277-7236
Fax (415) 277-7238

**ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE CLASS**